1  Ian S. Landsberg, Esq. (SBN 137431)
   Brigitte Gomelsky, Esq. (SBN 255717)
2  **LANDSBERG & ASSOCIATES**
   **A Professional Law Corporation**
3  16030 Ventura Boulevard, Suite 470
   Encino, California 91436
4  Telephone: (818) 705-2777
   Facsimile: (818) 705-3777
5  Email: ilandsberg@landsberg-law.com

6  [Proposed] Attorneys for Debtor and Debtor-in-Possession

7

8              **UNITED STATES BANKRUPTCY COURT**

9               **CENTRAL DISTRICT OF CALIFORNIA**

10                  **NORTHERN DIVISION**

11  In re                          )  Case No.: ND 09-bk-14307-RR
                                    )
12  VIVOMETRICS, INC.,             )  Chapter 11
                                    )
13                                  )  **APPLICATION BY DEBTOR AND**
                                    )  **DEBTOR IN POSSESSION TO EMPLOY**
14         Debtor and Debtor in Possession.  )  **BROADWAY ADVISORS LLC**
                                    )  **AS INVESTMENT BANKERS;**
15                                  )  **DECLARATION OF ALFRED M.**
                                    )  **MASSE IN SUPPORT THEREOF**
16                                  )
                                    )  [No Hearing Required]
17  _____)

18       VivoMetrics, Inc., debtor and debtor in possession herein (the "Debtor"), hereby files this

19  application (the "Application") to employ Broadway Advisors, LLC ("Broadway Advisors") as its

20  investment bankers in this chapter 11 case, effective as of November 13, 2009, pursuant to the

21  terms and conditions of the engagement letter between Debtor and Broadway Advisors dated

22  November 7, 2009 (the "Agreement"), annexed hereto as **Exhibit "A"**.

23       This Application is brought pursuant to section 327(a) of title 11 of the United States Code

24  (the "Bankruptcy Code"), Federal Rule of Bankruptcy Procedure 2014, and Local Bankruptcy Rule

25  2014-1.  In support of the Application, the Debtor respectfully represents as follows:

26                        **Background**

27       1.     On October 16, 2009 (the "Petition Date"), the Debtor filed a voluntary petition for

28  relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2088.002

2.    The Debtor continues to operate its business and manage its affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner or committee has been appointed in this chapter 11 case (the "Case").  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    The Debtor has selected Broadway Advisors as its investment bankers because of Broadway Advisors' diverse experience, knowledge, and reputation in marketing and sale of technology, its understanding of the issues involved in chapter 11 cases, and the Debtor's belief that Broadway Advisors possesses the resources and qualifications to provide the investment banking services required.  Broadway Advisors is a leading turnaround, restructuring and crisis management advisor to companies, as well as to creditors in large, complex, and high profile restructurings, bankruptcies, and wind-downs.

4.    The following Broadway Advisors professionals will be responsible for providing professional services to the Debtor:  Alfred M. Masse, Principal, Brian M. Schkeryantz and Leticia T. Lujan, Consultants, and other personnel, as required and agreed upon by Broadway Advisors and the Debtor during the chapter 11 process.

5.    Biographies of Mr. Masse, Mr. Schkeryantz and Ms. Lujan are attached hereto as **Exhibit "B"**.

6.    To date, Broadway Advisors has provided, and/or will provide on a going-forward basis upon the Court's approval of this Application, the following services:

a.    Compile a "Sales Book" to present the Debtor most favorably to potential buyers, including asset ledgers, asset valuation information, intellectual property descriptions, projections, sales procedures and §363 auction guidelines;

b.    Develop and implement a marketing plan and timetable, matched to available resources, to best solicit qualified buyers;

c.    Manage and coordinate all aspects of the sale process, including information flow, solicitation of and negotiations with potential buyers;

     d.     Negotiate with potential buyers to achieve maximum value for the assets and confirm a stalking horse buyer (if a stalking horse bidder has not been confirmed);

     e.     Manage the auction process to ensure the bankruptcy estate receives the highest and best offer;

     f.     Shepherd the transaction through to confirmation by the Bankruptcy Court; and,

     g.     Coordinate the foregoing action items with counsel for the Debtor, creditors and their counsel, and provide regular and thorough information to the Debtor and other interested parties via conference calls, update reports and face-to-face meetings.

     h.     Perform such other tasks as may be agreed to by Broadway Advisors and directed by the Debtor or order of the Court.

7.     Broadway Advisors has provided investment banking services since November 13, 2009, for which it has not yet been compensated. Debtor has filed with the Court a Motion for Post-Petition Financing which seeks court approval for post-petition financing, which financing includes the payment to Broadway Advisors the sum of $40,000.00[1] plus a success fee.

8.     Broadway Advisors has never been paid by the Debtor or any other party in connection with the representation of the Debtor.

9.     Per the Agreement, the Debtor has agreed to pay Broadway Advisors as follows:

     a.     Payment of a one-time fee of $20,000 for preparation of the sales book and marketing materials;

     b.     Payment of a fixed monthly fee of $10,000 (for marketing efforts) starting November 13, 2009 for a period of 60 days through and including January 13, 2010, unless extended by written agreement of the parties hereto and approved by the Court. However,

---

[1] This sum may be increased by an additional $10,000 as set forth in paragraph 9 herein and Exhibit "A" attached hereto.

1  if the sale hearing extends into the 3rd month, the Debtor and Broadway may agree to one

2  additional payment of $10,000 without further court order[2]; and,

3        c.    In addition to the foregoing payments, payment to Broadway Advisors of a

4  Success Fee calculated as follows:  the greater of $50,000 (the "Minimum Success Fee") or

5  10% of the first $1,000,000 in value to the Estate, plus 8% of the second $1,000,000, 6% of

6  the third $1,000,000, 4% of the fourth $1,000,000 in value to the Estate, plus 2% thereafter

7  of the value to the Estate.  A credit bid, provided no other bona fide offer is received in

8  excess of the credit bid, is excluded from the "value to the estate."

9      10.    It is contemplated that Broadway Advisors will seek interim compensation during

10  this case as permitted by sections 330 and 331 of the Bankruptcy Code and Bankruptcy Rule 2016.

11  Broadway Advisors understands that its compensation in this case is subject to the prior approval

12  of this Court after notice and a hearing in accordance with sections 330 and 331 of the Bankruptcy

13  Code, Bankruptcy Rule 2016 and Local Bankruptcy Rule 2016-1.  Broadway Advisors will seek to

14  be compensated pursuant to the Guidelines of the Office of the United States Trustee and draw

15  upon funds available from the estate, particularly any funds allocated to Broadway Advisors under

16  any agreement with a secured creditor for post-petition financing.  Broadway Advisors understands

17  the Debtor is seeking post-petition financing with a budget providing for the payments set forth

18  herein.

19      11.    Broadway Advisors understands that the Debtor has retained and may retain

20  additional professionals during the term of the engagement.  Broadway Advisors may have worked

21  with the additional professionals in the past and agrees to work cooperatively with such

22  professionals on this Case to integrate any respective work conducted by the professionals on

23  behalf of the Debtor.  Broadway Advisors has assured the Debtor that it will work closely with

24  each of these firms to take care not to duplicate efforts in this chapter 11 case.

25

26

27     [2] Since Broadway Advisors did not commence activities until November 13, the $20,000
payment would be for the month of November rather than October, with the 60 day period running

28  through the middle of January 2010.

12.    Broadway Advisors has informed the Debtor that Broadway Advisors has no material connection with the Debtor, its creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee for the Central District of California (the "U.S. Trustee"), or any person employed in the office of the U.S. Trustee in the above-captioned Chapter 11 case.

13.    Based on the Declaration of Alfred M. Masse, the Debtor believes that Broadway Advisors (i) does not hold or represent any interest adverse to the Debtor or its estate, and (ii) is a "disinterested person" as that term is defined in Section 101(14) and 327 of the Bankruptcy Code.

14.    To the best of the Debtor's knowledge and based upon the attached Declaration of Alfred M. Masse, neither Broadway Advisors nor any of its Principals, Managing Directors, Directors or Consultants is or was, within two years before the date of the filing of the petition, a director, officer, or employee of the Debtor.

15.    Pursuant to Local Bankruptcy Rule 2014-1 (b)(4), a hearing is not required in connection with the Application unless requested by the United States Trustee, a party in interest, or otherwise ordered by the Court.

16.    Pursuant to Local Bankruptcy Rule 2014-1 (b)(3), any response to the Application and request for hearing must be in the form prescribed by Local Bankruptcy Rule 90131(f)(1) and must be filed with the Court and served upon the Debtor, its proposed counsel, and the United States Trustee no later than 15 days from the date of service of notice of the filing of the Application.

17.    Notice of filing of this Application was provided, in the form attached hereto as **Exhibit "C**, to counsel for the creditors holding the twenty largest unsecured claims, the Office of the United States Trustee, and any party who filed and served a request for special notice as of the date of service of the Notice.

///

///

///

///

1    **WHEREFORE**, the Debtor requests that this Court approve the employment of Broadway

2    Advisors as investment advisors to the Debtor, effective as of November 13, 2009, to render

3    services as described above, with compensation to be paid by the Estate as an administrative

4    expense in such amounts as this Court may hereafter determine and allow.

5    Dated: December 3, 2009          By:

6                                           Howard Baker
                                            President and Chief Executive Officer
7                                           Vivometrics, Inc.
                                            Debtor and Debtor-in-Possession
8

9    Presented By:

10   **LANDSBERG & ASSOCIATES**
11   **A Professional Law Corporation**

12        */s/ Ian S. Landsberg*
     By: _____
13        Ian S. Landsberg
          [Proposed] Attorneys for the Debtor
14        and Debtor-in-Possession

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### DECLARATION OF ALFRED M. MASSE

I, Alfred M. Masse, hereby declare and state as follows:

1.      I am a principal of Broadway Advisors, LLC ("Broadway Advisors), a consulting firm that specializes in corporate restructuring, operations improvements and investment banking services.

2.      I make this declaration in support of the Application (the "Application") filed by Vivometrics, Inc., the debtor and debtor in possession herein (the "Debtor") to employ Broadway Advisors as investment advisor to the Debtor, effective as of November 13, 2009.  A true and correct copy of the Engagement Agreement is attached hereto as **Exhibit "A"** and incorporated herein by this reference.

3.      Unless indicated otherwise, the statements made herein are of my own personal knowledge, and if called upon to testify, I could and would competently testify to their truth.

4.      The name, address, telephone number, and facsimile number of Broadway Advisors is as follows:

        Broadway Advisors, LLC
        511 30th Street
        Newport Beach, CA 92663
        Tel: 949-673-0855
        Fax: 949-266-0321

5.      Broadway Advisors is recognized for its expertise in providing crisis management and financial advisory services in financially distressed situations, advising debt and equity financings, including advising debtors, creditors and other constituents in chapter 11 proceedings.  I personally have more than 17 years of investment banking, corporate turnaround and bankruptcy experience.  Assignments for the sale of bankruptcy assets in which Broadway Advisors  and/or I have been actively involved include, among others:   Trend Technologies Inc., Calcomp, Olympia Tools Inc., Coast Manufacturing Co., Strouds, Babystyle/Right Start, Tune-Up Masters Inc. and Ameripol – Synpol.   A copy of my resume and the resumes of Broadway Advisors' staff expected to provide services in this matter is attached hereto as **Exhibit "B".**

6.      Subject to further order of this Court, and without being exclusive, Broadway Advisors proposes to render the following types of services to the Debtor:

7

a.      Compile a "Sales Book" to present the Debtor most favorably to potential buyers, including asset ledgers, asset valuation information, intellectual property descriptions, projections, sales procedures and §363 auction guidelines;

b.      Develop and implement a marketing plan and timetable, matched to available resources, to best solicit qualified buyers;

c.      Manage and coordinate all aspects of the sale process, including information flow, solicitation of and negotiations with potential buyers;

d.      Negotiate with potential buyers to achieve maximum value for the assets and confirm a stalking horse buyer (if a stalking horse bidder has not been confirmed);

e.      Manage the auction process to ensure the bankruptcy estate receives the highest and best offer;

f.      Shepherd the transaction through to confirmation by the Bankruptcy Court; and,

g.      Coordinate the foregoing action items with counsel for the Debtor, creditors and their counsel, and provide regular and thorough information to the Debtor and other interested parties via conference calls, update reports and face-to-face meetings.

h.      Perform such other tasks as may be agreed to by Broadway Advisors and directed by the Debtor or order of the Court.

7.      Broadway Advisors has provided investment banking services since November 13, 2009, for which it has not yet been compensated. Debtor has filed with the Court a Motion for Post-Petition Financing which seeks court approval for post-petition financing, which financing includes the payment to Broadway Advisors the sum of $40,000.00[3] plus a success fee. The initial payment of $30,000 is due and owing, but has not been tendered awaiting court approval of the Debtor's Motion for Post-Petition Financing and approval of this employment application.

---

[3] This sum may be increased by an additional $10,000 as set forth in paragraph 9 herein and Exhibit "A" attached hereto.

8.      Broadway Advisors has never been paid by the Debtor or any other party in connection with the representation of the Debtor.

9.      Per the Agreement, the Debtor has agreed to pay Broadway Advisors as follows:

a.      Payment of a one-time fee of $20,000 for preparation of the sales book and marketing materials;

b.      Payment of a fixed monthly fee of $10,000 (for marketing efforts) starting November 13, 2009 for a period of 60 days through and including January 13, 2010, unless extended by written agreement of the parties hereto and approved by the Court. However, if the sale hearing extends into the 3rd month, the Debtor and Broadway may agree to one additional payment of $10,000 without further court order[4]; and,

c.      In addition to the foregoing payments, payment to Broadway Advisors of a Success Fee calculated as follows:  the greater of $50,000 (the "Minimum Success Fee") or 10% of the first $1,000,000 in value to the Estate, plus 8% of the second $1,000,000, 6% of the third $1,000,000, plus 4% of the fourth $1,000,000 in value to the Estate, plus 2% thereafter of the value to the Estate. A credit bid, provided no other bona fide offer is received in excess of the credit bid, is excluded from the "value to the estate."

10.     It is contemplated that Broadway Advisors will seek interim compensation during this case as permitted by sections 330 and 331 of the Bankruptcy Code and Bankruptcy Rule 2016. Broadway Advisors understands that its compensation in this case is subject to the prior approval of this Court after notice and a hearing in accordance with sections 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016 and Local Bankruptcy Rule 2016-1. Consistent with the Guidelines of the Office of the United States Trustee, Broadway Advisors will draw upon funds available from the estate, pursuant to a budget associated with the Debtor's Motion for Post-Petition Financing, scheduled for hearing on December 15, 2009. Broadway Advisors understands the Debtor is seeking post-petition financing with a budget providing for the payments set forth herein.

---

[4] Since Broadway Advisors did not commence activities until November 13, the $20,000 payment would be for the month of November rather than October, with the 60 day period running through the middle of January 2010.

11.    Broadway Advisors has provided crisis management and financial advisory services to the Debtor since November 13, 2009, for which it has not been paid pursuant to the Agreement.

12.    I understand that the Debtor has retained and may retain additional professionals during the term of the engagement. Broadway Advisors may have worked with the additional professionals in the past and agrees to work cooperatively with such professionals on this case to integrate any respective work conducted by the professionals on behalf of the Debtor. Broadway Advisors has assured the Debtor that it will work closely with each of these firms to take care not to duplicate efforts in this chapter 11 case.

13.    To the best of my knowledge, Broadway Advisors does not have any connection with the Debtor, its creditors, any other party in interest, their respective attorneys or accountants, the United States Trustee (the "U.S. Trustee"), or any person employed in the office of the U.S. Trustee.

14.    To the best of my knowledge, Broadway Advisors nor any of its staff is a creditor, equity security holder, or an "insider" of the Debtor as that term is defined in section 101(31) of the Bankruptcy Code.

15.    To the best of my knowledge, neither Broadway Advisors nor any of its staff is or was, within two years before the date of the filing of the petition, a director, officer, or employee of the Debtor.

16.    To the best of my knowledge, Broadway Advisors does not have any interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor or for any other reason.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 3rd day of December, 2009 at Newport Beach, California.

Alfred M. Masse

10

EXHIBIT "A"



November 7, 2009

Howard Baker, CEO
VivoMetrics, Inc.
121 N. Fir Street, Suite E
Ventura, CA 93001

Dear Howard:

We are pleased that you have selected Broadway Advisors, LLC ("Broadway" or "we") as
investment bankers to VivoMetrics, Inc. ("VMI", the "Debtor", or the "Company"). This letter
agreement ("Agreement") confirms the scope of Broadway's employment in this case.
Specifically, Broadway will perform the following tasks:

1) **Investment Banker Services to the Company ("Investment Banker Services")**

    a)   Compile "Sales Book", within 14 days from the completion of negotiating a carve-out
with DIP lender for Broadway fees and expenses which will be determined in
Broadway's sole discretion, to present the Company most favorably to potential buyers,
including asset ledgers, asset valuation information, intellectual property descriptions,
projections, sales procedures and §363 auction guidelines,

    b)   Develop and implement a marketing plan and timetable, matched to available
resources, to best solicit qualified buyers,

    c)   Manage and coordinate all aspects of the sale process, including information flow,
solicitation of and negotiations with potential buyers,

    d)   Negotiate with potential buyers to achieve maximum value for the assets and confirm a
stalking horse buyer (if a stalking horse bidder has not been confirmed),

    e)   Manage the auction process to ensure the Estate receives the highest and best offer,

    f)   Shepherd the transaction through to confirmation by the Bankruptcy Court, and

    g)   Coordinate all the above action items with counsel for the Debtor, creditors and their
counsel, and provide regular and thorough information to the Debtor and other
interested parties via conference calls, update reports and face-to-face meetings.

Our objective is to provide high quality advisory services to you at a fair and reasonable cost.
This Agreement outlines the basis upon which we will render these services, and confirms our
understanding with respect to the determination and payment of fees and the reimbursement of
costs and expenses.

        1.     Scope of Services and Client Duties.  You are hiring us solely as your
investment bankers. Our responsibilities will be to provide the Company with the services and
completion of the tasks outlined in this Agreement. We will keep you informed on the progress
of the matters we are handling and respond to your inquiries. You understand the need for
truthful, complete and accurate information. You also understand the need to cooperate and to

*Howard Baker, CEO*
*VivoMetrics, Inc.*
*November 7, 2009*
*Page 2 of 4*

keep us informed on a timely basis of any developments as may impact upon the services that we are to provide. During the course of our work, a matter may come to our attention that might warrant the performance of additional or expanded procedures. Before addressing such matters we will discuss them with you promptly in order for you to assess the need for additional or expanded work. Any agreement for the expansion of services provided hereunder must be executed in writing by both parties. Obviously, we will both be expected to abide by the terms of this Agreement.

2.      Fees and Billing Practices. Our professional fees are usually determined by the number of hours expended multiplied by our hourly billing rates, however for this assignment we have agreed to work on a one-time fee of $20,000, for preparation of the "sales book and marketing materials" plus a fixed monthly fee of $10,000 (for marketing efforts) plus a Success Fee (Section 3 below) starting October 26, 2009 for a period of 60 days through and including December 31, 2009 (November and December 2009), unless extended by written agreement of the parties hereto and approved by the Court. However, if the sale hearing extends into the third month, the Debtor and Broadway may agree to one additional payment of $10,000 without further court order. Our fees and timelines included in this Agreement assume all projections, financial and company/product information and supporting documents will be made available to Broadway on a timely basis, and that Company management and personnel will cooperate fully and will be available to Broadway as needed.

3.      Success Fee: Broadway shall be paid an additional fee (a "Success Fee") upon the occurrence of any of the following events (each, a "Triggering Event"): (a) execution of one or more agreements for the sale of all or substantially all of the Company's assets to one or more buyers pursuant to Section 363 of the Bankruptcy Code or otherwise (a "Sale"), which may include a series of sales at auction or (b) in addition to the foregoing, upon entry of an order by the bankruptcy court approving an application made by Broadway for payment of a Success Fee on any other grounds, notice of which application was provided in accordance with the requirements of the Bankruptcy Code, Bankruptcy Rules and any other order(s) of the bankruptcy court and following any hearing required thereon. Occurrence of any of the foregoing Triggering Events shall obligate you to pay a Success Fee upon the first of the following to occur: (1) upon Closing of any Sale during the term of this Agreement (2) upon closing of a Sale within one hundred eighty (180) day following the termination of this Agreement with respect to any Sale to a buyer solicited by Broadway prior to the termination of this Agreement or other transaction arranged or negotiated by Broadway; or (3) upon closing of a Sale that occurs within ninety (90) days following the termination of this Agreement whether or not the buyer at such a Sale was identified by Broadway, or the transaction was arranged or negotiated by Broadway. The Success Fee shall be calculated as follows: the greater of $50,000 (the "Minimum Success Fee"), or 10% of the first $1,000,000 in value to the Estate, plus 8% of the second $1,000,000 in value to the Estate, plus 6% of the third $1,000,000 in value to the Estate, plus 4% of the fourth $1,000,000 in value to the Estate, plus 2% thereafter of the value to the Estate. For purposes of calculating the success fee, any court approved credit bid received from the DIP lender shall be excluded from the "value to the estate" provided no other bona fide offer is received that is in excess of the credit bid. However, if a bona fide offer less than the DIP lender's potential credit bid (valued at $300,000 for purposes of this calculation) is accepted and approved by the Court then the Minimum Success Fee shall be calculated as follows: Amount of Bona Fide Offer / $300,000 x $50,000. For example, if a bona fide offer of $180,000 were accepted and approved, the Minimum Success Fee would be $30,000, e.g. ($180,000 / $300,000) x $50,000. The above notwithstanding, the Success Fee shall not exceed 50% of the transaction value. Regardless of whether there is a court approved credit bid, all fees related to the preparation of the sales book and the monthly marketing fee are still earned and payable by the Debtor.

*Howard Baker, CEO*
*VivoMetrics, Inc.*
*November 7, 2009*
*Page 3 of 4*

4.  **Costs and Other Charges.** In general, we will incur various costs and expenses in the normal course of performing under this Agreement. Costs and expenses commonly include, but are not limited to: travel, airfare on an airline of our choosing, meals, lodging at a Marriott Hotel or similar property, telephone calls, legal fees (including those legal fees incurred in the negotiation of this agreement or any other agreement related to this or to a subsequent engagement), printing, photocopying and other postage, parking, printing, photocopying and other reproduction and binding costs, messenger and other delivery fees, express mail, information retrieval services, temporary clerical assistance and other similar items. All costs and expenses will be charged at our cost. Advertising and other direct marketing expenses related to sale of the Company's assets are to be paid directly by VMI. Expenses in excess of $1,000 shall be approved by VMI.

5.  **Billing Statements.** We will provide the Company with a monthly invoice indicating fees and costs incurred and payment will be due upon receipt.

6.  **Discharge and Withdrawal.** You may discharge us at any time and we have the right to withdraw from this engagement at any time. If you are dissatisfied for any reason, we will cease our efforts. Reasons for our withdrawal may also include, but are not limited to, your breach of this Agreement, your failure to pay our invoices when due, your refusal to cooperate with us or to follow our advice on a material matter or any fact or circumstance that would render our continuing representation of you unlawful or unethical.

7.  **Disclaimer of Guarantee.** Nothing in this Agreement should be construed as a promise or guarantee about the outcome of any of our efforts. Our comments about the outcome or likely results of any effort are expressions of personal opinion only and are not representations or warranties and do not otherwise bind us.

8.  **Limitation on Liability.** The Company shall indemnify and hold harmless Broadway and its personnel from and against any claims, liabilities, costs and expenses (including without limitation, attorneys' fees and the time of Broadway's personnel involved) brought against, paid or incurred by Broadway at any time and in any way arising out of or relating to our services under this Agreement, except to the extent finally determined to have resulted from the gross negligence or willful misconduct of Broadway's personnel. This provision shall survive the termination of this Agreement for any reason. We shall not be liable for consequential damages since any management decisions by the Company are solely the Company's responsibility.

9.  **Information.** The Company's management shall be responsible for providing the information necessary for our review and analysis. The accuracy and completeness of such information, upon which we rely and which will form the basis of any plan that we help prepare are the responsibility of the Company.

10. **Fees and Disputes.** If any legal action, arbitration or proceeding is initiated concerning the terms and provisions of this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees and other costs incurred in such action, arbitration or proceeding. It is agreed and understood that any such legal action, arbitration or proceeding shall be brought in the United States Bankruptcy Court for the Central District of California (Santa Barbara Division) whose laws and procedures shall apply

*Howard Baker, CEO*
*VivoMetrics, Inc.*
*November 7, 2009*
*Page 4 of 4*

       11.      Entire Agreement. Unless otherwise agreed in writing between us, all other matters referred to us shall be governed by the terms of this letter, and any other attached schedule. This Agreement contains all terms of the agreement between us applicable to our work for you, and may not be modified except by a written agreement signed by both of us.

If this letter accurately reflects our agreement, please sign and return it to us and remit payment of the retainer.

If you have any questions concerning the provisions of this Agreement, we invite your inquiries. We look forward to working with you.

Very truly yours,
BROADWAY ADVISORS, LLC

Alfred M. Masse
Principal


VivoMetrics, Inc.

Howard Baker, CEO

EXHIBIT "B"

# Alfred M. Masse

Mr. Masse is a Principal of Broadway Advisors, LLC. He has managed turnaround engagements for more than fifteen years and has extensive experience with the turnaround process including engagements for debtors, creditors and bank groups in both Chapter 11 and out-of-court restructurings. He has consulted with and assumed senior management positions in a variety of troubled companies including Z Gallerie, Sizzler International, Tune-Up Masters and Hard Candy.

Currently, Al serves as CRO for Right Start /Babystyle , an industry leading multi-channel retailer of juvenile products and apparel for babies, young children and pregnant women. With 45 stores across the U.S. and a strong internet presence the Company recorded sales of $68 million. Prior to Right Start/Babytsyle Al served as Co-Chief Responsible Officer and Director of Olympia Group, Inc. DIP, a privately held imported and distributor of hand-tools and lawn and garden products for the consumer and professional markets. Al has also served as also assumed various management and consulting roles across numerous industries, serving as President of 5th and Sunset, a multi-national commercial photography studio and equipment rental company , interim CFO for a privately held medical device manufacturer with $25 million in annual sales ,and restructuring advisor to Trend Technologies, Inc,, a $700 million global manufacturer of metal and plastic enclosures for the electronics and telecommunications industry. Other clients have included Oasis Corporation, Galasso Bakery and Reptron Electronics, Inc. (OTC).

Al was a founding member and Managing Director of Baymark Strategies, LLC, a financial advisory and turnaround firm started by former Coopers & Lybrand restructuring partners. During his five years at Baymark, his clients ranged in size from $10 million to $750 million and included Hard Candy and the California Restaurant Association where he served as interim CEO. Prior to Baymark Strategies, Al spent five years as a manager in Coopers & Lybrand's corporate recovery and restructuring practice. There, he provided workout and financial advisory services to Chapter 11 companies and out-of-court workout clients including Common Wealth Equity Trust, Tosco Refining Corporation and Digitech.

Al was Vice President Corporate Development of Cadiz (NASDAQ), a $175 million agricultural and ground-water resource company, where he was responsible for all acquisition efforts and for negotiating purchase agreements with private and governmental agencies.

Al holds a BA in Economics from UCLA and is an instructor in the Entrepreneurial Business Program at the University of Southern California. He has served on the Board of Directors of Tune-Up Masters.



# Brian M. Schkeryantz

Brian is a Consultant and has over twelve years of experience providing corporate finance, strategy and financial consulting services, including mergers and acquisition and capital placement, to small and mid-cap companies. He has worked and consulted within a variety of industries including multi-unit retail, technology, manufacturing, and business service businesses.

Most recently Brian provided financial advisory and wind-down services for Right Start / Babystyle, a multi-channel retailer with $67 million in sales of juvenile products and baby and maternity apparel through 48 retail locations and internet sites. For Right Start / Babystyle, his responsibilities included development of cash flow forecasts and projections, analysis of sales, inventory sell-thru and pricing trends, preparation of creditor claims analysis, sales & use tax returns and Office of U.S. Trustee monthly operating reports, and the marketing and sale of the Company's tangible and intangible assets pursuant to a §363 auction sale.

Prior to Broadway, Brian was a member of Gryphon Equity Group where he provided financial, operational and M&A consulting services including valuations and transactional services to a variety of small to mid-cap companies in diverse industries including manufacturing, retail, medical devices and high technology. Prior to Gryphon, Brian worked in corporate development at Epson America where he designed and prepared quantitative analyses for use in strategic planning and new product launches. Prior to Epson, Brian was the Director of Financial Research at Magnum Financial Group, Inc. a Los Angeles-based firm providing financial consulting services to micro- and small-cap public companies and pre-public companies intending to go public.

Before Magnum, Brian was a Senior Vice President and financial and operations principal for an NASD-registered broker/dealer providing merger & acquisition and capital placement services to lower middle market companies.

Brian also served as Executive Vice President for a brokerage and financial services firm where he researched and prepared business plans, developed financial and valuation models and designed investor presentations for public and private offerings.

Brian earned an MBA from the University of Southern California and he graduated with honors from San Diego State University with a degree in Business Administration. He is member of ACG, and a former Vice President of the Orange County Chapter of the USC Marshall Alumni Association.

3



2

# Leticia T. Lujan

Ms. Lujan is a Consultant with eight years of marketing experience including planning, managing and executing strategic campaigns for small to mid-cap companies. She is well-versed with business to consumer and business to business practices and has a background in advertisement, public relations, promotions and market research. She has worked within and consulted to a variety of industries including entertainment, business services, automotive, gaming as well as retail.

Most recently Leticia lent her talents to the wind down campaigns for Right Start, Babystyle and Cadeau respectively developing a multi-tiered marketing plan designed to quickly increase the recovery. She identified and targeted secondary consumer groups, negotiated third party placement at minimal cost, designed multi-media marketing materials and formulated strategic pricing plans. Her efforts also included development of a "teaser" memorandum, a vital piece used to sell the companies intellectual property - trademarks, domain names, CRM database as well as proprietary apparel designs for costumes and toys.

In addition, Leticia has played a key role in managing and preparing critical data necessary for the filing of clients Schedules of Assets and Liabilities and Statements of Financial Affairs.

Previously, Leticia has worked with 20th Century Fox, Comcast Cable, Hollywood Records, Maverick, Morongo Casino Resort & Spa, Sony/BMG, Universal Music Group and Time Warner Cable.

Leticia earned a BA in Economics from the University of Southern California.




EXHIBIT "C"

1  Ian S. Landsberg, Esq. (SBN 137431)
   Brigitte Gomelsky, Esq. (SBN 255717)
2  **LANDSBERG & ASSOCIATES**
   **A Professional Law Corporation**
3  16030 Ventura Boulevard, Suite 470
   Encino, California 91436
4  Telephone: (818) 705-2777
   Facsimile: (818) 705-3777
5  Email: ilandsberg@landsberg-law.com

6  [Proposed] Attorneys for Debtor and Debtor-in-Possession

7

8                  **UNITED STATES BANKRUPTCY COURT**

9                  **CENTRAL DISTRICT OF CALIFORNIA**

10                          **NORTHERN DIVISION**

11  In re                                    )  Case No.: ND 09-bk-14307-RR
                                             )
12  VIVOMETRICS, INC.,                       )  Chapter 11
                                             )
13                                           )  **NOTICE OF APPLICATION TO**
                                             )  **EMPLOY BROADWAY ADVISORS**
14            Debtor and Debtor in Possession. )  **LLC AS INVESTMENT BANKERS**
                                             )
15                                           )       [No Hearing Required]
                                             )
16                                           )
                                             )
17  _____ )

18       **PLEASE TAKE NOTICE** that an application ("Application") has been filed by

19  VivoMetrics, Inc., debtor and debtor in possession herein (the "Debtor") to employ Broadway

20  Advisors, LLC ("Broadway Advisors") as its investment bankers in this chapter 11 case, effective

21  as of November 13, 2009, to perform the following services in connection with this chapter 11

22  case:

23            a.      Compile a "Sales Book" to present the Debtor most favorably to potential

24  buyers, including asset ledgers, asset valuation information, intellectual property descriptions,

25  projections, sales procedures and §363 auction guidelines;

26            b.      Develop and implement a marketing plan and timetable, matched to

27  available resources, to best solicit qualified buyers;

28

2088.002

c.    Manage and coordinate all aspects of the sale process, including information flow, solicitation of and negotiations with potential buyers;

d.    Negotiate with potential buyers to achieve maximum value for the assets and confirm a stalking horse buyer (if a stalking horse bidder has not been confirmed);

e.    Manage the auction process to ensure the bankruptcy estate receives the highest and best offer;

f.    Shepherd the transaction through to confirmation by the Bankruptcy Court; and,

g.    Coordinate the foregoing action items with counsel for the Debtor, creditors and their counsel, and provide regular and thorough information to the Debtor and other interested parties via conference calls, update reports and face-to-face meetings.

h.    Perform such other tasks as may be agreed to by Broadway Advisors and directed by the Debtor or order of the Court.

**PLEASE TAKE FURTHER NOTICE** that any request for a copy of the Application must be made in writing to Landsberg & Associates, A Professional Law Corporation, 16030 Ventura Boulevard, Suite 470, Encino, California 91436, Attn.: Ian S. Landsberg, Esq.

**PLEASE TAKE FURTHER NOTICE** that, subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, the United States Trustee Guidelines and this Court's rules, Broadway Advisors has provided investment banking services to the Debtor since November 13, 2009, for which it has not yet been compensated.  Debtor has filed with the Court a Motion for Post-Petition Financing which seeks court approval for post-petition financing, which financing includes the payment to Broadway Advisors the sum of $40,000.00[1] plus a success fee.

Broadway Advisors has never been paid by the Debtor or any other party in connection with the representation of the Debtor.

---

[1] This sum may be increased by an additional $10,000 as set forth herein, and **Exhibit "A"** to the Employment Application of Broadway Advisors as Investment Bankers.

Per the Agreement, the Debtor has agreed to pay Broadway Advisors as follows:

a.    Payment of a one-time fee of $20,000 for preparation of the sales book and marketing materials;

b.    Payment of a fixed monthly fee of $10,000 (for marketing efforts) starting November 13, 2009 for a period of 60 days through and including January 13, 2010, unless extended by written agreement of the parties hereto and approved by the Court. However, if the sale hearing extends into the 3rd month, the Debtor and Broadway may agree to one additional payment of $10,000 without further court order[2]; and,

c.    In addition to the foregoing payments, payment to Broadway Advisors of a Success Fee calculated as follows:  the greater of $50,000 (the "Minimum Success Fee") or 10% of the first $1,000,000 in value to the Estate, plus 8% of the second $1,000,000, 6% of the third $1,000,000, 4% of the fourth $1,000,000 in value to the Estate, plus 2% thereafter of the value to the Estate. A credit bid, provided no other bona fide offer is received in excess of the credit bid, is excluded from the "value to the estate."

**PLEASE TAKE FURTHER NOTICE** that it is contemplated that Broadway Advisors will seek interim compensation during this case as permitted by sections 330 and 331 of the Bankruptcy Code and Bankruptcy Rule 2016. Broadway Advisors understands that its compensation in this case is subject to the prior approval of this Court after notice and a hearing in accordance with sections 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016 and Local Bankruptcy Rule 2016-1. Broadway Advisors will seek to be compensated pursuant to the Guidelines of the Office of the United States Trustee and draw upon funds available from the estate, particularly any funds allocated to Broadway Advisors under any agreement with a secured creditor for post-petition financing. Broadway Advisors understands the Debtor is seeking post-petition financing with a budget providing for the payments set forth herein.

**PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule 2014-1, any party asserting an objection to the Application and/or wishing to request a hearing

---

[2] Since Broadway Advisors did not commence activities until November 13, the $20,000 payment would be for the month of November rather than October, with the 60 day period running through the middle of January 2010.

thereon, must, not later than fifteen (15) days from the date of service of this Notice, file a written

objection or request for hearing with the Clerk of the Bankruptcy Court in the form required by

Local Bankruptcy Rule 9013-1(f)(1), and serve such objection or request for hearing on the United

States Trustee as well as proposed counsel for the Debtor whose name and address appear at the

upper left-hand corner of the first page of this Notice.

**PLEASE TAKE FURTHER NOTICE** that failure to file and serve an objection or

request for hearing within this fifteen (15) day period may be deemed by the Court to be consent to

the relief requested herein.

**WHEREFORE**, the Debtor requests that this Court approve the employment of Broadway

Advisors as investment advisors to the Debtor, effective as of November 13, 2009, to render

services as described above, with compensation to be paid by the Estate as an administrative

expense in such amounts as this Court may hereafter determine and allow.

Dated: December 8, 2009

**LANDSBERG & ASSOCIATES**
**A Professional Law Corporation**

By: /s/ *Ian S. Landsberg*
Ian S. Landsberg, Esq.
[Proposed] Attorneys for the Debtor
and Debtor-in-Possession

## PROOF OF SERVICE

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: *16030 Ventura Boulevard, Suite 470, Encino, CA 91436*

A true and correct copy of the foregoing document described as **NOTICE OF APPLICATION TO EMPLOY BROADWAY ADVISORS LLC AS INVESTMENT BANKERS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>December 8, 2009</u>, checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- *Douglas G Boven    dboven@reedsmith.com*
- *Kathleen A Cashman-Kramer    kcashman@psdslaw.com*
- *Brian D Fittipaldi    brian.fittipaldi@usdoj.gov*
- *Ian Landsberg    ilandsberg@lm-lawyers.com*
- *Daniel A Lev    dlev@sulmeyerlaw.com*
- *Victor A Sahn    vsahn@sulmeyerlaw.com*
- *United States Trustee (ND)    ustpregion16.nd.ecf@usdoj.gov*

☐    Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(<u>indicate method for each person or entity served</u>):   On <u>December 8, 2009</u>, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☒    Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email, on the date indicated next to the method of service used for each person(s) or entity(ies) served as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| *December 8, 2009* | *Rebeca Benitez* | */s/ Rebeca Benitez* |
| Date | Type Name | Signature |

2088.002
NOTICE OF LANDSBERG & ASSOCIATES EMPLOYMENT APPLICATION

## SERVICE LIST

*Via U.S. Mail*

Office of the United States Trustee
Northern Division
Brian Fittipaldi Esq.
128 E. Carrillo St.
Santa Barbara, CA 93101

United States Bankruptcy Court
Central District of California
Santa Barbara – Northern Division
1415 State Street, Courtroom 201
Santa Barbara, CA 93101
Attention: Honorable Robin L. Riblet's
Chamber

Office of the United States Trustee
Office of the United States Trustee
Woodland Hills Branch
Attn: Dennis Strayhan
21051 Warner Center Lane, Suite 115
Woodland Hills, CA 91367

Debtor
VivoMetrics, Inc.
2351 E. Main Street
Ventura, CA 93003

**20 Largest Unsecured Creditors**

ASTA-USA Translation Services
100 Main Street
Hartville, WY 82215

Credit Suisse First Boston
c/o Daniel Lev, Esq.
SulmeyerKupetz
A Professional Corporation
333 South Hope Street, 35th Floor,
Los Angeles, CA 90071

David Gary Kaplan Living Trust
8162 Camp Chaffee Road
Ventura, CA 993001

Deborah A. Dillon, dba V&E Associciates
c/o Leonard E. Aron, Esq.
Law office of Leonard e. Aron
942 East Main Street
Ventura, CA 93001-1985

Francis Law Group
Attention: Ralph Francis
1942 Embarcadero
Oakland, CA 94606

i3 Pharma Resourcing
131 Morristown Road
Rasking Rridge, NY 07920

Intelligent Textiles Limited
Yew Tree Lodge Studio
21 Staines Road
Lalehyam Middlesex
TW 182TA UK

Ventura County Tax Collector
Lawrence L. Matheney
800 S. Victoria Avenue
Ventura Boulevard, CA 93009

Medtech Development
Attention: Bob Stone
1296 Lawrence Station Road, #100
Sunnyvale, CA 94089

Non-Invasive Monitoring System
4400 Biscayne Boulevard
Miami, FL 33137

PaeTec Communications, Inc.
6167 Bristol Parkway, Suite 100
Culver City, CA 90230

Porter Noveli Life Sciences
1838 Solutions Center
Chicago, IL 60677

| | | |
|---|---|---|
| 1 | Richardson & Patel, LLP<br>Attention: Addison Adams<br>10900 Wilshire Boulevard, #500<br>Los Angeles, CA 90024 | Seaside Investment Group, LLC<br>c/o Darin Marx, Esq.<br>Lowthorp, Richards, et al.<br>300 Esplanade Drive, Suite 850<br>Oxnard, CA 93036 |

1
2
3
4

Richardson & Patel, LLP
Attention: Addison Adams
10900 Wilshire Boulevard, #500
Los Angeles, CA 90024

Seaside Investment Group, LLC
c/o Darin Marx, Esq.
Lowthorp, Richards, et al.
300 Esplanade Drive, Suite 850
Oxnard, CA 93036

Stellartech Research Corp.
1349 Bordeaux Drive
Sunnyvale, CA 94086

General Counsel
Terremark North America, Inc.
2 S Biscayne Boulevard, Suite 2900
Miami, FL 33131

Travelers Insurance
One Tower Square, 5MS
Hartford, CT 06183

Whiteboard Product Sloutions
6811 Flying Cloud Drive
Een Prairie, MN 55344

Windes & McClaughry Acc. Corp.
Attention: Gordon McClean
111 West Ocean Boulevard, 22nd Floor
Long Beach, CA 90801

Winston & Strawn, LLP
36235 Treasury Center
Chicago, IL 60694

Agent for Service of Process
Paetec Communications
c/o CT Corporation System
818 West Seventh Street
Los Angeles, CA 90017

Agent for Service of Process
Terremark North America, Inc.
131-A Stoney Circle, Suite 500
Santa Rosa, CA 95401

2088.002                                  3
NOTICE OF LANDSBERG & ASSOCIATES EMPLOYMENT APPLICATION

# PROOF OF SERVICE

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: *16030 Ventura Boulevard, Suite 470, Encino, CA  91436*

A true and correct copy of the foregoing document described as **APPLICATION BY DEBTOR AND DEBTOR IN POSSESSION TO EMPLOY BROADWAY ADVISORS LLC AS INVESTMENT BANKERS; DECLARATION OF ALFRED M. MASSE IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**</u> – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>December 8, 2009</u>, checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- *Douglas G Boven    dboven@reedsmith.com*
- *Kathleen A Cashman-Kramer    kcashman@psdslaw.com*
- *Brian D Fittipaldi    brian.fittipaldi@usdoj.gov*
- *Ian Landsberg    ilandsberg@lm-lawyers.com*
- *Daniel A Lev    dlev@sulmeyerlaw.com*
- *Victor A Sahn    vsahn@sulmeyerlaw.com*
- *United States Trustee (ND)    ustpregion16.nd.ecf@usdoj.gov*
- 

☐    Service information continued on attached page

II. <u>**SERVED BY U.S. MAIL OR OVERNIGHT MAIL**</u>(indicate method for each person or entity served):
On <u>December 8, 2009</u> , I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☒    Service information continued on attached page

III. <u>**SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL**</u>
(indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email, on the date indicated next to the method of service used for each person(s) or entity(ies) served as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| *December 8, 2009* | *Rebeca Benitez* | */s/ Rebeca Benitez* |
|---|---|---|
| Date | Type Name | Signature |

2088.002

APPLICATION FOR EMPLOYMENT OF BROADWAY ADVISORS LLC

# SERVICE LIST

*Via U.S. Mail*

**Attorney for Office of the United States Trustee**
Brian Fittipaldi, Esq.
128 E. Carrillo Street
Santa Barbara, CA 93101

**Office of the United States Trustee**
Office of the United States Trustee
Woodland Hills Branch
Attn: Dennis Strayhan
21051 Warner Center Lane, Suite 115
Woodland Hills, CA 91367

**United States Bankruptcy Court**
The Honorable Robin L. Riblet
Central District of California – Santa Barbara Branch
1415 State Street
Santa Barbara, CA 93101

**Broadway Advisors, LLC**
Alfred M. Masse
511 30th Street
Newport Beach, CA  92663